UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 21-00048-WES |
| v. | ) |
| | ) |
| OWEN BATISTA, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Owen Batista ("Batista") is due to be sentenced on July 14, 2022, on two charges of distribution of child pornography and one charge of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4). Counts One and Two, which charge Batista with distribution of child pornography, carry a statutory minimum sentence of 5 years of imprisonment. The Guideline range, as determined by the Probation Department, is 151-188 months of imprisonment. The United States recommends a sentence of 188 months of imprisonment due to the seriousness of the offense and the need to protect children from this defendant.

I.   Overview of Offense Conduct

The facts of this case, as outlined in paragraphs 12-21 of the PSR, demonstrate the threat to public safety posed by this defendant.

On August 6, 2020, a law enforcement officer in Salt Lake City, Utah was operating in an online undercover capacity utilizing the application LiveMe to identify individuals who were involved with the sexual exploitation of children.

1

While the undercover employee was operating on LiveMe in August 2020, an individual later determined to be defendant Batista posted two links in a group chat titled "Links," of which Batista was a member. The group "Links" was identified by the undercover officer as a child pornography group where members distribute to one another videos/images of prepubescent age children engaged in sexual contact with adults and other children. This distribution was done via links which directed members to online digital storage folders typically known as "Mega" links.

The undercover officer accessed the Mega link posted by Batista, under user name xXMAMI_CrazyXx, which was a folder containing 738 files. The observed files were all mp4 video files. Eighteen of the videos were downloaded by the undercover officer as a sample. Seventeen of these eighteen videos depicted the horrendous sexual abuse of children. The files included: (i) a video depicting a prepubescent girl laying on a mattress with her vagina exposed while an adult male filmed her, masturbated, and touched the girl's vagina. The girl appeared to be 7 to 10 years old, (ii) a video depicting an adult male having anal sex with a prepubescent girl while she laid on her back and held her ankles above her head, and (iii) a video depicting an infant, under 1 year old, sleeping nude on a floor. An adult male was filming while standing over the infant masturbating. The male then inserted the tip of his penis into the infant's mouth causing the infant to wake and begin crying.

Investigators determined that the individual who distributed these horrific videos did so from 181 Gould Avenue in Warwick, the home of defendant Batista. On October 21, 2020, law enforcement officers executed a federal search warrant issued at this location. After being advised of his *Miranda* rights, Batista admitted that he shared the two links described above containing child pornography on LiveMe.

Law enforcement officers identified and seized an ipad tablet that belonged to defendant Batista. A preliminary search of this device at the scene revealed one video of a prepubescent girl engaged in sexual contact with an adult male. Batista admitted that he viewed this video a short while before the officers arrived on October 21, 2020. A full forensic analysis of this tablet was conducted and three additional videos containing child pornography were located. One of these videos is a compilation of still images depicting nude children and child rape. The children in the images range from approximately 2 to 10 years old. The images included an image of a male adult inserting his penis into the vagina of a nude girl approximately 2-years old.

In a recorded interviewed with the FBI, Batista was asked if he ever had actual sexual contact with a child. Batista stated that approximately one year ago he had an "opportunity" alone with his 5-year old female cousin and that he "took advantage of the moment." Batista admitted to taking multiple nude pictures of the young girl and to making about 4 videos of this girl performing oral sex on him. Batista stated that he sent these videos and photos to another individual on LiveMe who went by the name "LoveSteven".

Following defendant's admission that he sent videos and pictures of him molesting his 5-year old cousin on LiveMe, law enforcement conducted an extensive investigation to locate these images and videos. LiveMe records revealed that the "LoveSteven" account was associated with the email address collazodb@gmail.com. A search of FBI records determined that the account belonged to a New York man named David Burgos-Collazo ("Colazzo"). The FBI New York Office arrested Colazzo on October 26, 2020, in New York on charges of Distribution of Child Pornography. A review of information from a Search Warrant executed on Colazzo's LiveMe account revealed numerous images of child pornography that had been sent by Batista to

Colazzo. For example, on April 2, 2020, Batista sent Colazzo a mega link with approximately 25 images of child pornography.

The review of Colazzo's LiveMe account also revealed approximately 130 messages exchanged between Batista and Colazzo from March 23, 2020, to April 23, 2020. The communications included the following:

04/01/2020 - Batista: "I'll send a vid of my sis doingbj on me on telegram please shes mad at me for deleting it"

Although this evidence was found, investigators were unable to recover the actual molestation images and videos Batista admitted to creating.

II.     Sentencing Recommendation

In fashioning an appropriate sentence, the Court must consider the factors delineated in 18 U.S.C. § 3553(a). Two of those factors, the seriousness of the offenses and the need to protect the public, cry out for a lengthy sentence in this case.

Seriousness of the Offenses

There can be no question that the offenses committed by Batista were extremely serious. Batista repeatedly posted and shared videos of young children being raped. He took the most horrific moment a child could experience and used the recordings from that moment for his own twisted personal gratification. Not stopping there, he shared these child-rape videos with countless other pedophiles he met online.

The harm resulting from this conduct is many-fold. First and foremost is the harm done to the innocent children in these videos who were molested. The victims of these crimes not only had to endure the trauma of sexual abuse and all that entails, they had to undergo further trauma

knowing that the images and videos of the worst moments of their lives were being passed around the internet for pedophiles to enjoy.

The children depicted in defendant's collection of child pornography, both the images and the videos he distributed, are all actual victims of defendant's offense conduct and experience harm from the distribution of the images and videos of their rape and sexual abuse. "Individuals depicted in child pornography are harmed by the continuing dissemination and possession of such pornography containing their image. Such material are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759 (1982). "[T]he materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting children in years to come." *Osborne v. Ohio*, 495 U.S. 103, 111 (1990). "[A]s a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249 (2002). The continuing harm caused by the dissemination and possession of child pornography is "well supported by medical and social science." *See United States v. Kearney*, 672 F.3d 81, 94 (1st Cir. 2012) (citing *Ferber*, 458 U.S. at 759-60 & nn. 9-10 (collecting authorities)).

In *Paroline v. United States*, 572 U.S. 434 (2014), the United States Supreme Court described the harm of one particular victim of child pornography. The victim, when eight and nine years old, "was sexually abused by her uncle in order to produce child pornography[,]" and her uncle was prosecuted and "sentenced to a lengthy prison term." *Id.* at 440. The victim "underwent an initial course of therapy" over approximately two years and appeared to return to

"normal[.]" *Id.* "[h]er involvement in dance and other age-appropriate activities… justified an optimistic assessment." *Id.* She appeared "to decline in her teenage years[,]" and "a major blow to her recovery came when, at the age of 17, she learned that images of her abuse were available nationwide and no doubt worldwide." *Id.* In a victim abuse statement, this victim described her injury from the distribution of her images as follows:

> Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them – at me – when I was just a little girl being abused for the camera. I did not choose to be there, but now I am there forever in pictures that people are using to do sick things. I want it all erased. I want it all stopped. But I am powerless to stop it just like I was powerless to stop my uncle…. My life and my feelings are worse now because the crime has never really stopped and will never really stop…. It's like I am being abused over and over and over again.

*Id.* at 440-41. The crimes of this victim's original abuser "were compounded by the distribution of images of her abuser's horrific acts, which meant the wrongs inflicted upon her were in effect repeated; for she knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her." *Id.* at 441.

The children depicted in Defendant's collection of child pornography are harmed every time their images come into focus before another pair of strange eyes. Defendant was one of those strangers, and it is known that Defendant put videos of child pornography before the eyes of other strangers. For the harm Defendant caused all of his victims, a lengthy term of incarceration is reasonable and proper. Absent such a reasonable term of incarceration, sentencing cannot achieve justice for Defendant's victims

Moreover, defendants like Batista who collect and share videos of child rape encourage further molestation of children by creating a market for this horrific material. Batista was a member of a social media group in which members repeatedly shared with one another videos of

6

children being sexually abused. What was pointed out by the Seventh Circuit Court of Appeals in assessment of child pornography crimes warrants careful consideration here:

> "Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded – both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced."

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (citations omitted); *see also*, *Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Lichtman*, 683 Fed.Appx. 873, 879 (11th Cir. 2017) ("A strong consideration in weighing the seriousness of [receipt of child pornography and possession of child pornography] is that those who receive and exchange child pornography create a demand that influences the production of the pornography and the attendant physical and emotional injury to children."); *United States v. Ellison*, 113 F3d 77, 81 (7th Cir. 1997) (observing that "even the receipt of [child pornography] for personal use, without more, keeps producers and distributors of this filth in business.").

The First Circuit has repeatedly found that concern about the effects of demand for child pornography, namely the perpetuation or increase of supply, justify lengthy jail terms for child pornography possession. *See United States v. Gomera-Rodriguez*, 952 F.3d 15, 20 (1st Cir. 2020) (97-month term of incarceration substantively reasonable as means of deterring demand and thereby tamping down supply); *United States v. Hassan-Saleh-Mohamad*, 930 F.3d 1, 9 (1st Cir. 2019) ("There is nothing erroneous about the district court's statement about fueling demand

and supply, and this was a reasonable factor for the court to weigh (especially here, where [defendant] not only possessed child pornography but also made available at least two videos on a file-sharing network.)"); *United States v. Gall*, 829 F.3d 64, 75 (1st Cir. 2016) (because "possession of child pornography fueled the market for child pornography, and thus indirectly harmed children[,]" Guidelines range sentence for child pornography possession offense was substantively reasonable.)  One of the goals of sentencing in child pornography matters is reduction of the demand for child pornography. *See id.*

Defendant fueled the market for child pornography.  He both possessed videos of child pornography, including images of infants and other prepubescent children, and he propagated pornographic films of prepubescent children. For one involved in the creation and perpetuation of demand for child pornography and its attendant harm to children, a lengthy term of incarceration is reasonable and proper.

Protection of the Public

A predominant 3553 factor in this case is the need to protect the public from this defendant. This defendant poses a severe danger to prepubescent minors. There can be no question that Batista is sexually attracted to young children. He repeatedly distributed videos of very young children being sexually abused. He was found in possession of such videos. In fact, Batista admitted to watching one such video, involving a prepubescent girl, a short while before officers executed the search warrant at his home on October 21, 2020. The young children in all of these videos need to be protected from this defendant, who takes pleasure in viewing and distributing recordings made of the worst moments of their lives.

This is not a case in which the Court needs to speculate as to the true danger of an individual who has amassed a collection of child pornography on his computer. The evidence

gathered in this case clearly demonstrates that Batista poses a severe danger to children he encounters. Batista admitted to previously molesting a young child. During the execution of the search warrant, defendant admitted to FBI agents that he took nude photos of his then five-year old cousin and that he took videos of this child performing oral sex on him. These admissions are on tape – there is no question that Batista made them. The Government attaches hereto as Exhibit A the relevant portions of the transcript of defendant's post-arrest interview.[1] In this interview, defendant states that his 5-year old cousin was "clingy" to him and that she would always try to sneak into his room. One day, defendant admits, this young child came to his room while her mother (defendant's aunt) was downstairs. Defendant stated that this provided him with an "opportunity" and that he "took advantage of the moment." Specifically, defendant admitted that he took multiple pictures of this girl naked and that he made about 4 videos of this child with his penis in her mouth. Batista further admitted that he sent the videos and photos involving this young girl on LiveMe to an individual who went by the name of "LoveSteven."

      Following defendant's admission that he sent videos of him molesting his 5-year old cousin on LiveMe, law enforcement conducted an extensive investigation to locate those videos. They identified the LiveMe user "LoveSteven" to be New York man Collazo. The FBI New York Office arrested Colazzo on October 26, 2020, in New York on charges of Distribution of Child Pornography.  A review of information from a Search Warrant executed on Colazzo's LiveMe account revealed numerous images of child pornography that had been sent by Batista to Colazzo. For example, on April 2, 2020, Batista sent Colazzo a mega link with approximately 25 images of child pornography.

---

[1] In order to protect the privacy and confidentiality of the victim, the names of the young girl and her mother have been redacted from this transcript.

The review of Colazzo's LiveMe account also revealed approximately 130 messages exchanged between Batista and Colazzo from March 23, 2020, to April 23, 2020. A spreadsheet containing all of the messages exchanged between Batista and Colazzo is attached hereto as Exhibit B. One of these messages in particular corroborates Batista's statement that he produced a video of a young girl performing oral sex on him. On April 1, 2020, Batista sent Colazzo the following message: "I'll send a vid of my sis doingbj on me on telegram please shes mad at me for deleting it."[2] In other communications concerning his "sister," defendant wrote that he "was watchin some with my sister and she loved it" and that "my sis wants to put the video on telegram."

The only reason that this defendant was not charged with production of child pornography, which carries a 15-year minimum sentence, is that he was sophisticated enough to send the videos he made through Telegram, a Russian application which is notoriously unresponsive to U.S. law enforcement. Both Batista and Colazzo were well aware that Telegram provided them with a relatively safe mechanism to distribute the molestation videos they possessed and created. Indeed, on March 25, 2020, Colazzo messaged Batista: "Telegram is gold."

A review of the 3553 factors supports a very heavy sentence in this case. There can be no doubt of the seriousness of the crime or the danger that Batista poses to young girls. Defendant's own statements and the very disturbing child pornography that he possessed and distributed fully show the danger that he poses.

---

[2] In his post-arrest statement, defendant claimed that he was somehow coerced by "LoveSteven" into sending the images and videos he made of his 5-year old cousin. There is no indication in any of these messages that defendant was in any way threatened into making and sending these videos. The truth is that defendant decided to "take advantage" of an "opportunity" to molest a young girl for his own gratification.

        Respectfully submitted,

        ZACHARY A. CUNHA
        UNITED STATES ATTORNEY


        /s/ Lee H. Vilker_____
        LEE H. VILKER
        Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 12th day of July, 2022, I caused the within Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

      /s/ Lee H. Vilker
LEE H. VILKER
Assistant U. S. Attorney,
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000, 401-709-5001 (fax)