UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| V.   : | CASE NO.: 1:21-CR-00048-001 |
| : | |
| OWEN BATISTA   : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Owen Batista, by and through counsel, submits this memorandum to aid the Court with imposing a sentence that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a). For the reasons below, Mr. Batista requests a sentence that does not exceed the applicable mandatory minimum sentence of sixty (60) months.

## I.   BACKGROUND

Mr. Batista was arrested on October 21, 2020, after a complaint was filed against him in U.S. District Court for the District of Rhode Island charging Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), and Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Law enforcement agents became aware of Mr. Batista when Salt Lake City Police conducted an investigation into individuals who were using the mobile application LiveMe to exchange child pornography. Further investigation revealed that child pornography was downloaded using an IP address associated with Mr. Batista's residence. Accordingly, law enforcement obtained a warrant for Mr. Batista's home and computer equipment contained therein capable of storing child pornography.

Mr. Batista was present at the time of the warrant execution. He fully cooperated with authorities and admitted to downloading child pornography. Soon after his arrest, Mr. Batista initially appeared before the Court and was detained pending a preliminary examination. On October 23, 2020, Mr. Batista appeared before the Court for a detention hearing. The Court ultimately released him on a $10,000 unsecured bond with standard conditions and in addition, that he remain in his mother's custody and reside in his family home.

On May 14, 2021, a federal grand jury returned a three count Indictment against Mr. Batista that included two (2) counts of Distribution of Child Pornography, in violation of, 18 U.S.C. § 2252(a)(2) and (b)(1), and one (1) count of Possession of Child Pornography, 18 U.S.C. § 2252(a)(4)(B) and (b)(2). On May 14, 2021, Mr. Batista appeared before the Court for arraignment. He pleaded not guilty to the charged offenses and was released on the previously imposed conditions.

On April 11, 2022, Mr. Batista appeared before the Court for a change of plea hearing. He pleaded not guilty to the Indictment without the benefit of a plea agreement. After signing the agreement and upon further consideration, the Defense realized that the government offered no real consideration to Mr. Batista for pleading guilty. Pretrial negotiations netted no tangible benefits to him. Unlike the overwhelming majority of child pornography cases in this District, the government was unwilling to dismiss the distribution charges against Mr. Batista in exchange for his admission to possessing child pornography. Traditionally, the government will make such an offer to dismiss a distribution charge, which carries mandatory jail, if a defendant agreed to a joint jail sentence recommendation, typically set by the government. The government deviated from this practice with respect to Mr. Batista, despite his young age, lack of criminal history, and challenges, because it believes he sexually offended against a minor, though there is

no credible evidence to believe this crime was perpetrated. Faced with the options of pleading to the indictment, entering into a plea agreement that offered no benefits whatsoever, or proceed to a losing trial, he elected to accept responsibility for his actions and place his fate in the hands of the Court. In response, the Court accepted Mr. Batista's pleas and adjudged him guilty. He is now scheduled to appear for sentencing on July 14, 2022.

U.S. Probation issued its final presentence report (PSR) related to this case on July 7, 2022. The PSR calculates Mr. Batista's total offense level at 34[1] with a criminal history category of I.[2] Accordingly, his advisory sentencing guidelines range is 151 months to 188 months.[3] The Defense has no objections to the final PSR.

## II.     SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment set forth in 18 U.S.C. § 3553 (a). *United States v. Booker*, 543 U.S. 220 (2005). Sentencing should begin with a calculation of the applicable sentencing guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)). The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration. *Id.*

A Court may not presume the guidelines range is reasonable but must make an individualized assessment of each defendant based upon the facts presented in each case. *Gall,* 128 S. Ct. at 597 (emphasis added). After both parties are afforded an opportunity to argue for

---

[1] PSR, ¶.42.
[2] PSR, ¶.45.
[3] PSR, ¶.88.

whatever sentence they deem appropriate, the Court must then consider the factors[4] of 18 U.S.C. § 3553 (a) to determine the most appropriate sentence for the instant case. *Id*. As such, Mr. Batista requests a sentence of sixty (60) months.

The Defense specifically asks the Court to consider the following information when fashioning an appropriate sentence in this case.

**(1) History and Characteristics of the Defendant**

    **A. Family**

Mr. Batista is 28 years old.[5] He was born in Providence, RI to the union of Jose Batista, age 45, and Fanny Franco, age 42.[6] Throughout his childhood, he and his family shared a multi-family home, located at 181 Gould, Avenue in Warwick, RI, with extended family. At times, as many as 17 people resided in their home. This included Mr. Batista's three siblings and many cousins. Mr. Batista's eldest sibling, paternal half-brother, Juan Batista, age 30, lives in Rhode Island with his four children.[7] Mr. Batista's sister, Erin, age 25, lives in Pawtucket with her

---

[4] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
  (2) the need for the sentence imposed:
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  (3) the kinds of sentences available;
  (4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
  (5) any pertinent policy statement issued by the Sentencing Commission;
  (6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
  (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553 (a).

[5] PSR, ¶. 48.
[6] PSR, ¶. 57.
[7] PSR, ¶. 58.

daughter and works at a call center.[8] His youngest brother, Jose, age 21, who suffers from physical and mental disabilities, including a seizure disorder, lives with Erin during the week and stays with Mr. Batista and his parents at the Gould Avenue residence on weekends.[9] Mr. Batista shares a very close bond with Jose, and exhibits significant feelings of distress and guilt over his brother's condition.[10] During his pre-sentencing interview, Batista reported that after tapping his brother on the head while attending a baseball game with their father, his brother proceeded to suffer a grand mal seizure. As a result, Mr. Batista has since blamed himself for Jose's medical issues. However, per Jose Batista's physician, Jose was diagnosed with Chiari Malformation, and that regardless of whether he was "tapped on the head," Mr. Batista is not responsible for Jose's various physical and mental disabilities.[11]

Mr. Batista is not married.[12] He has one son, Lenin, age 12, who was conceived when Mr. Batista and the child's mother, Leandra Loarca, were both freshmen in high school.[13] Lenin currently resides with Ms. Loarca, however, prior to Mr. Batista's arrest, Lenin lived with his father fulltime.[14] Mr. Batista is known to be a devoted father and enjoys a strong, healthy relationship with his son. Everyone in Mr. Batista's family, including Lenin, are aware of his legal situation and remain fully supportive of him at this time.[15]

---

[8] PSR, ¶. 59.
[9] PSR, ¶. 60.
[10] PSR, ¶. 50.
[11] Id.
[12] PSR, ¶. 62.
[13] PSR, ¶. 52, 62.
[14] PSR, ¶. 62.
[15] PSR, ¶. 65.

### B. Education and Employment

Mr. Batista graduated from the MET High School in Providence in 2013.[16] He then went on to work for Burger King and Price Rite before attending New England Tractor Trailer School in 2015.[17] Although he successfully completed the program, he has yet to pass the requisite driver's test. Between 2017 and 2020, Mr. Batista held various jobs in retail and food service, including with Walmart, Family Dollar, Wendy's, and Door Dash.[18] In March of 2022, Mr. Batista secured employment with Ocean State Job Lot in their North Kingstown, RI warehouse.[19]

### C. Mental Health

Mr. Batista suffers from a number of diagnosed mental health issues. As a juvenile, he was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), and began taking medication to treat it at age 9.[20] Mr. Batista reported having anger issues as a juvenile, and that the medication prescribed to treat his ADHD exacerbated his anger, to the extent that he would "explode" and punch walls at school and at home.[21] During once such incident, Mr. Batista broke his hand from punching a wall. As part of a Psychosexual Risk Assessment of Mr. Batista, conducted by Robert Grant, LICSW, on April 1, 2022, a review of a March 7, 2011, Psychological Report from Providence Career and Technical Academy indicated that Mr. Batista was part of the Special Education program and that he received a score of 72 on an IQ test.

---

[16] PSR, ¶. 80.
[17] PSR, ¶. 81, 83.
[18] PSR, ¶. 83.
[19] PSR, ¶. 82.
[20] PSR, ¶. 68.
[21] PSR, ¶. 51.

During the assessment by Mr. Grant, Mr. Batista reported that he believes his paternal grandfather sexually assaulted him. He also recalled first being exposed to pornography at a very young age when he accidentally turned on his grandfather's VCR, which had a pornography tape inside. Similarly, during a Neuropsychological Evaluation conducted on April 11, 2022, by Dr. Francis Sparadeo, Mr. Batista reported that he was exposed to various traumas, including experiencing "someone doing something sexual to him against his will," and that he experienced such sexual abuse "before he was 16 years old."

Through pretrial supervision, Mr. Batista was referred to CODAC, Inc., where he received a psychiatric evaluation by Laura Levine, LMHC.[22] Following the evaluation, Levine diagnosed him with unspecified depressive disorder, unspecified depression, and an unspecified psychotic disorder. However, Ms. Franco was present throughout the entire evaluation, which affected Mr. Batista's candor, and the thoroughness of the exam.[23] Ms. Franco confirmed to Levine that Mr. Batista had previously been diagnosed with depression but had yet to be formally diagnosed with anxiety. He was given this diagnosis in October of 2020 when he applied and was approved for Social Security Disability Income.[24]

During a medication review conducted by CODAC, Inc. on March 29, 2022, it was determined that Mr. Batista would continue his current medication regiment of Risperidone, prescribed to treat his psychotic disorder, which causes hallucinations, including visions of "shadows," and auditory hallucinations, specifically "hearing voices".[25] The evaluations conducted by CODAC, Inc, Dr. Sparadeo, and Mr. Grant, each revealed that Mr. Batista has long

---

[22] PSR, ¶. 70.
[23] Id.
[24] PSR, ¶. 71.
[25] PSR, ¶. 72.

struggled with a variety of serious mental health issues including: impaired decision-making and reasoning skills; difficulty understanding and processing information; various phobias, including symptoms of Obsessive Compulsive Disorder (OCD); learning disorders; and significant memory problems.[26]

Mr. Batista has reported that working full-time, attending regular counseling sessions, and his current medication regimen have shown great improvement in relation to these various psychological issues. As reported by Mr. Grant, data indicates Mr. Batista is at a low/moderate risk for committing a contact sexual offense if his mental health issues are appropriately addressed and monitored.

### D. Substance Abuse

At the age of 14, Mr. Batista first experimented with marijuana and alcohol, and as he got older, began drinking in excess to the point of losing consciousness, such that his mother would have to care for him.[27] Mr. Batista reported that his drinking also escalated after he lost a friend to suicide. Mr. Batista continued using marijuana until approximately 2017.[28] At one point during this period, Mr. Batista contends that his maternal uncle attempted to get him to experiment with cocaine, which he refused. Mr. Batista never used any other illicit substances and stopped drinking alcohol some years ago.[29] He has never been in a substance abuse treatment program and all drug testing samples taken since his arrest have been negative.[30]

---

[26] PSR, ¶. 70.
[27] PSR, ¶. 75.
[28] PSR, ¶. 77.
[29] PSR, ¶. 76, 77.
[30] PSR, ¶. 78.

In an interview with Mr. Batista's mother, Ms. Franco, she asserts that Mr. Batista never drank regularly, that she is unaware of any friend committing suicide, and that her brother, a successful businessperson who resides in Massachusetts, was not a part of her son's upbringing, nor did he have a reputation for using drugs.[31]  However, Ms. Franco confirmed that around 2015, Mr. Batista attended therapy at Gershon Psychological Associates in Warwick, RI, which Mr. Batista contends was the period of time following the overdose death of a friend.[32]

**(2) Term of Incarceration**

The Defense fully acknowledges that a term of incarceration may be warranted for Mr. Batista's admitted misconduct.  However, the arbitrary sentence recommended by the advisory guidelines is greater than necessary to achieve the federal sentencing factors.  Simply and boldly put, the suggested guidelines range is *ridiculous*.  As stated above, Mr. Batista is a young man with no criminal history.

Further, he has done well on pretrial release, to include participating in counseling and completing at least two evaluations, at his own expense, and with separate providers.  He is emotionally and intellectually challenged, relying on his parents for almost everything: emotional and financial support, guidance, advice, supervision, and more.   Despite being a young man, Owen is a like a kid.  His level of maturity is well below that expected of an average 27-year-old.  He is not a predator or a pedophile.  And contrary to the government's continuous assertions and speculation, there is no credible evidence to conclude he has sexually offended against a minor child.

---

[31] PSR, ¶. 76,77.
[32] PSR, ¶. 69.

While there is no meaningful excuse or justification for Mr. Batista's admitted acts, what he needs most is therapy and treatment, as opposed to spending time in jail. Incarceration mainly serves to punish an offender for his or her criminal acts. Mr. Batista is not asking or expecting a non-jail sentence. Legally, such is not even possible. However, when considering his overall characteristics and circumstances, and in the spirit of progressive punishment, five years in jail for someone who has never been incarcerated before, for a first-time offender, is beyond considerable.

### III.   MISCELLANEOUS REQUESTS

Mr. Batista asks the Court to recommend to the Bureau of Prisons (BOP) that he be allowed to serve his sentence at a confinement facility as close to Rhode Island as possible. He also asks that he be afforded the chance to self-report, as opposed to being taken into custody at the time of sentencing.

### IV.   ATTACHMENTS

- **A.** Statements of Support
- **B.** Diploma and Certificates
- **C.** Resume and Proof of Employment
- **D.** Photos

### V.   CONCLUSION

Based upon the foregoing, Mr. Batista respectfully asks the Court to impose a sentence of sixty (60) months, which he contends is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553 (a).

Respectfully submitted this 12th day of July 2022.

                Defendant,
                Owen Batista
                By his Counsel

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (Bar No.: 6809)
Law Office of John L. Calcagni III, Inc.
72 Clifford Street, Third Floor
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email: jc@calcagnilaw.com

**CERTIFICATION**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistered participants on July 12, 2022.

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (Bar No.: 6809)
Law Office of John L. Calcagni III, Inc.
72 Clifford Street, Third Floor
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email: jc@calcagnilaw.com